Good morning. May it please the court, opposing counsel. My name is Jerry Needham. I'm an assistant federal public defender. I'm representing the appellant Mr. Garcia-Romero. Mr. Garcia-Romero is a Mexican national who was charged in this district with illegal re-entry into the United States subsequent to an aggravated felony conviction. The predicate aggravated felony occurred approximately 12 years prior to his arrest here in Oregon. He received a 20 some odd month sentence on that case. He was back in the United States for approximately 8 years after his deportation. That's when we, about 3 years after his deportation he came back. He was in the United States about 8 years working, supporting his stepson and also his natural child. Approximately one year before he was arrested, the mother of his child who he was divorced from at the time gave him an ultimatum that come and get the child, she's not going to take care of him anymore. We are aware of the facts. Let me just sort of get to the bottom line of what concerns me about your argument and see if you can respond to this. The district court for the most part agreed with the argument that defense counsel made that there was an unusual bond with the son that should mitigate the sentence and the court departed downward very, very significantly on account of that. It seems like your basic argument is, well, the court should have done more and I don't understand how we could decide that that is unreasonable under the standards that the Supreme Court has recently set out for us. Sure. There was procedural error. Two instances. One, the court arrived, listened to the government and seemed to acknowledge the government's statement and took into consideration these improper arguments that the government made and the court relied on that. Secondly... Which argument? The one about the child and the state proceeding you mean? Pardon me? You mean the argument about the child and the state proceeding? Well, what the government said in page 15 on the excerpt of record, it said, it seems to me if we were to make any comment about the adoption proceeding, it would be that Mr. Garcia Romero is trying basically to take an American citizen from the United States and have him live in Mexico in an environment that the child doesn't know, has never been in, knows no one down there and there is, would simply not be in the best interest of the child. Where do you see that the district court ever... Pardon me? Did the court, though, adopt that? As I understand it, your argument is that the government's statements were wrong and the court listened to those arguments, but doesn't it have to listen even to bad arguments from both sides? Well, it can listen, but the court must explain that they're rejecting those arguments and tell us, tell this court... Didn't the court implicitly do that by departing downward for the reasons that you, that the defense counsel gave? Well, in this case, the district court said to the government counsel, I want you to know I'm not crediting all of defense counsel's arguments that you make some good points and I don't want you to worry about that. Isn't that sort of normal judge puffery, though? I mean, where do you find, I mean... No, I understand the court doesn't have to explain every nuance or every... Well, we may, we may today tell people that they've given great arguments and you might disagree, you know, but does that, I guess I don't really understand where you can point that the court actually adopted something specific that was incorrect. Well, the court should have rejected those arguments and put that on the record because the government said it was, you can't really, no one should interfere with an individual's right to have custody of their own child. The government was saying that the court shouldn't allow this individual, this defendant, to proceed as a parent in this adoption proceeding. What is the other procedural error that you allege? Well, the procedural error is one relying on these inaccurate, improper arguments. That's procedural error. And also not giving us a clear picture of why the court got to the sentence it did. Now, the court, on first blush, it looks like... But he did, actually. He didn't go as far down as you wanted. You wanted essentially time served so he could be... Correct. Out of prison so he might have a stronger case in adoption. Correct. Right. And the district court didn't go down that far, but he did go down substantially. Well, he... Explain why. Okay. On the basis of legitimate reasons. In this district... What you're saying is that he should have gone down farther and could have sentenced time served so that he could go... Even if he could go there in person, he had a better position in adoption. That's what you think should... Well, just because it would have been a reasonable sentence wouldn't have been an appropriate sentence. But that would have been. But you're saying that that's the only reasonable sentence that could flow from his finding... Well, this... Bonding and parting down, essentially. On first blush, it looks like it's a huge departure, five levels. But the backdrop of this case is in this district, individuals are offered a 30-month fast-track disposition. But that didn't apply to him. Pardon me? It did not apply to him. It did apply to him. He was offered that by the government. He didn't take it. He rejected it. Well, when he rejected it, he has to live with the consequences of that, which may not always be good consequences. I don't understand what procedural requirement there is. Requirement, as distinct from exercise of discretion, would demand that the court go back to the thing that the defendant didn't do, which is the fast-track. Well... That's really what you're saying. Even though it was not done, the district court had to do it. That's really what you're saying. And I don't know what the authority is for that. Well, the court should have rejected the government's arguments, first of all. But secondly, the fast-track disposition would have required him to plead guilty to counts two and three of the indictment, where the statutory maximum would have been 30 months. He rejected that, even though he was eligible for it, pled guilty to a more severe crime, count one of the indictment, which was a 20-year maximum, more time on supervised release, up to three years of supervised release. So the court was recognizing that would have been his guidelines if he had taken the offer, but he wouldn't have been able to advocate for a lower sentence. He would have had to have agreed to 30 months. So although... I understand all his reasons, but what you're saying is that the district court's hands were tied procedurally by that sequence of events, and I don't understand the authority for that. Well, the defendant's counsel, the defendant's hand would have been tied if he had taken the government's... Right, and now you're saying that the district court's hands were tied... Right. ...simply by the fact that that was a possibility that never came to fruition. But that somehow, in spite of the fact that it never came to fruition, represented a feeling. Counsel, on the first point, at ER 19, the court said, I don't have anything to do with the custody decision. Isn't that enough to... I mean, I don't think we really need to satisfy what you talked about in the first problem, but isn't that enough to satisfy your concern that the court rejected the argument about the state court? Yeah, of course, the court... What more would the district court have to do, if anything? Well, when the government is saying, interfere... And the district court's saying, you know what? That's out of my hands. I don't have anything to do with that. Isn't that pretty clearly a rejection of the court's involvement in that? He really... Again, I don't think he has to, but if he did that, the records suggest that he did, then isn't he done, from your perspective, that he complied with what you need? Well, from our perspective, when he says he credits the government's arguments, after the defense counsel makes his... Whether he credits it or not, he says, I don't have anything to do with that. But when he credited their arguments, he referenced the guideline 5H1.6, family ties of responsibility. So he specifically referenced that. Well, right, but the counsel... I take your point, because Mr. Sadie stood up right away and said, I object to the implications of counsel's argument, and thought it was very disturbing. And it sounded very, you know, jingoism and all of that, that, you know, why should we let this Mexican take his son back to Mexico? He's an American citizen and all of that. So that was troublesome, and Mr. Sadie objected to it. But this whole discussion of the adoption proceeding and the 5H1.6 came about because you all raised it, because it was part of the assessment. So that guideline was in there, and this whole adoption proceeding was brought in on the family ties basis. So for him, for the district court to make reference to that and talk about that, you were all skirting. I mean, you weren't, I guess none of you here in the courtroom that were in that courtroom. But as I read the transcript and the back and forth, it sounds like there was a lot of talk, trying to walk a fine line between getting over in the adoption proceeding, and then the district court ultimately went to the guts of what was before him, which was the evidence of bonding. That was what the legitimate concern was. Now, you would have liked him to have, A, I gather, said, I agree with Mr. Sadie, and it's a reprehensible argument, and I expressly disavow it. Although he did say, you know, Mr. Sadie, I hear very clearly what you're saying, and you're very persuasive in this, which is about what he said to them. But he said before that, he said you raised some legitimate points, and I think that's what you're objecting to. In any event, looking at the, it may have been an unfortunate statement, but I still think ultimately we have to look at what the court objectively did. And what the court objectively did, I think the burden you're having, is that the court showed extreme sensitivity to your client, and just didn't go as far as you'd like. I would just submit when a sentence is outside of the guidelines, the court must give us more information, and particularly with this record, it did. Outside the guidelines, downward? Downward, yes. So he went down, but he didn't give enough. He did go downward, because he recognized that it was an extremely unusual case, and there was a very strong relationship between the father and the son, and the father was essentially the only, the caregiver for the. Counsel, that's not a bizarre argument. I mean, had the court applied strict guidelines sentence, your client would have been sentenced to more time. And here you are objecting that he went downward, claiming it's unreasonable. Why would defense counsel even be making this argument? I'm not objecting that he went downward. I'm objecting that the government. He didn't go down far enough. Well, I understand you're saying he should have gone more, but I mean the theological construct of this is you're saying that, you know, he didn't follow the guidelines. Well, if he followed the guidelines, he would have been higher. You're saying he didn't go down far enough, but there's no, what case law do you rely upon that suggests that he had to go down any further? Well, I'm saying under Gall, the court, when it does depart, has to give specific reasons so that this court can decide if that departure was reasonable. And he did. He said that he finds this case to be extremely unusual because of the familial responsibility and the extraordinary relationship with the child. That's the reason that he gave. Is that an insufficient, isn't that the exact reason that you asked for? And he, the court very well would have gone further if not for these improper arguments from the government. We understand your position and you're several minutes over time. We'll hear from the government. May it please the court, Kelly Zuse has been appearing on behalf of the United States today. On the issue about the quantum of the district court's explanation for the sentence imposed, in addition to the reasons that the court has acknowledged and cited, I'd also point out more towards the beginning of the sentencing hearing, the district court judge here cited to United States v. Manyweather. It was the only case he cited. He said that he had read it and found it instructive because it dealt with the issue of family circumstances. And in Manyweather, this court held that a departure of one to four levels was considered the norm for family circumstances. So I think we need to include that piece when we're looking at the adequacy of the explanation given. The judge then went at great length to discuss the unique family circumstances. What he found was an extraordinary bond. And the guideline that would have applied but for his departure was 46 to 57 months. I think the district court here committed no procedural error. By no means did he adopt any of the arguments of the government. I think the result here shows conclusively that he in fact accepted the contrary arguments of the defendant. We haven't cross-appealed. And just to invoke a case from earlier this week, in Sprint v. Mendelsohn, and that's at 128 Supreme Court 1140, at footnote two, the Supreme Court specifically addresses the issue about when and whether an appellate court should assume that a district court has adopted an erroneous argument that's raised by an attorney. And what the court said was you should only do so when the district court makes it clear that it's actually adopting that argument. The district judge here, all he said about the government's argument was that the government had raised some legitimate points. Do you think it's the government's position that that was a proper argument to be making an observation that the district court should weigh the fact that the consequence would be a Mexican citizen taking an American-born child to Mexico? I think both parties started getting very speculative about what we're asking. I'm not asking about both parties. I'm asking about the government's statement. I think it was a fair inference from the record. So you think that's a proper thing that the court should have taken? I think it's a proper argument. And let me, if I may, give some context to this. Almost every week in federal district court we have individuals who come before the court for sentencing who ask for downward departures based upon cultural assimilation. And what they tell our district court judges is, look, give me a lower sentence, because I have been in the United States so long that sending me back to Mexico poses a significant hardship. I see those, too, counsel. I'm still asking how in this case does the fact that the consequence of allowing this man to be sentenced to time served and able to argue for the benefit of his retaining or gaining custody of his child instead of being put up for adoption or put into a foster home, why is that a proper argument? That somehow the natural father, who happens to be a Mexican citizen, might take him to Mexico. Especially after Elian Gonzalez. You do remember that? I do remember that, Your Honor. And two points. One is I think what the prosecutor here was attempting to say was, look, we don't know the situation. What's going on in the state custody proceeding, I don't think any of us can say what is the proper course there. State custody proceedings, who is going to be an appropriate parent or guardian, those are very complex, fact-intensive issues. We know from Mr. Sadie's submissions. But you're basically saying the government's position is proper to invoke the fact that the natural father would be a child from the United States and it would be better off for the child to be based in Mexico. And I wouldn't go that far. I'm trying to explain all sorts of things. I'm dealing with what was said in this case. You seem to say, yes, you're compassionate. I don't think there was anything improper about questioning whether or not what the defendant was promoting was, in fact, in the best interest of the child. Because that was something that really ought to be resolved by the state custody proceeding and not by a federal district judge who is tasked solely with imposing a sentence on an illegal reentry defendant. I think for all of the reasons we've discussed, the district court here committed no procedural error, imposed a sentence that is substantively reasonable, and the judgment should be affirmed. Unless the panel has any further questions, I'll submit. I don't believe so. Thank you, Your Honor. Thank you. And, Mr. Needham, you exceeded your time, so the case is now submitted. We appreciate the arguments that both of you brought to us today. The next case on our docket, it's still morning, this morning, is Spilatz. I'm probably mispronouncing that. Please correct me.
judges: Graber, Fisher, Smith